UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MILTON WILSON | CIVIL ACTION |
| VERSUS | NO. 23-2708 |
| DR. JOSE HAM, ET AL. | SECTION "B" (2) |

## ORDER AND REPORT AND RECOMMENDATION

Plaintiff Milton Wilson filed a complaint pursuant to 42 U.S.C. § 1983 which was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and(2). Upon review of the record, the court has determined that this matter can be disposed of without an evidentiary hearing.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Reed is an inmate housed in the St. Tammany Parish Jail ("STPJ"). ECF No. 3, ¶III(A), at 2. He filed this *pro se* and *in forma pauperis* § 1983 complaint against defendants, Dr. Jose Ham, St. Tammany Parish Jail Warden Daniel Fleischman, and St. Tammany Parish Sheriff Randy Smith, each in their individual and official capacities, challenging his medical care and the conditions of his confinement at STPJ. *Id*., ¶III(B), at 2.

### A.    Factual Allegations in the Complaint (ECF No. 3)

In his complaint, Wilson alleges that before his arrest, in either December 2020 or January 2021, he tested positive for asbestosis. *Id*., ¶IV, at 2. He later was arrested in October 2021 and placed in STPJ. On November 7, 2021, he submitted requests for medical care related to his

asbestosis diagnosis. Despite submitting numerous requests, he was never treated for asbestosis but he was charged for the medical visits.

In June 2022, he was seen by the nurse practitioner, Ms. Jessica, who was surprised he had not received treatment for his condition. *Id*. at 2-3. She ordered x-rays and tests, but they were not done. Wilson states that when her employment was terminated, he did not get the treatment she ordered. *Id*. at 3.

Beginning on October 7, 2022, he submitted additional requests for medical treatment for asbestosis through the kiosk at the jail. He continued doing so until November 16, 2022, when he filed an inmate grievance complaint through the jail's administrative grievance procedure. He claims that Dr. Ham responded to the grievance claiming that Wilson had not requested care for asbestosis until November 28, 2022.[1] Dr. Ham also denied that Wilson received outside treatment for asbestosis before his arrest. Wilson appealed to Warden Fleischman and then to Sheriff Smith but received no relief.

Wilson contends that he has been denied medical treatment for this serious condition, asbestosis. *Id*., ¶1, at 3. He claims he was erroneously charged $270 for doctors' visits and appointments at the jail although he never saw a doctor. *Id*. at ¶2. He was refunded only $26 of those charges. *Id*. He also claims that he is being housed in living conditions that directly exacerbate his COPD and asbestosis conditions. *Id*. at § 3.

As relief, Wilson seeks a preliminary injunction to obtain emergency outside medical treatment to continue what he received before his arrest. *Id*., ¶V(1), at 4. He also seeks a refund

---

[1] Wilson purports to summarize his grievance complaints dated October 7, October 18, October 27, November 3, 2022, and Dr. Ham's responses respectively dated October 17, November 1, and November 8, 2022. ECF No. 3, at 6-9. These are handwritten summaries and not photocopies.

of the $244 wrongly charged for care he did not receive, plus punitive, compensatory, and nominal damages. *Id*. at ¶V(2). He requests that an ombudsman be appointed to inspect the conditions of the jail and a temporary restraining order be issued against the St. Tammany Parish Sheriff's Office and CorrectHealth until the living conditions improve and are no longer harmful to inmates with COPD and/or asbestosis and until plaintiff receives proper medical care. *Id*. at ¶V(3).

### B.    Reply to § 1983 Response Order (ECF No. 9)

In his response to my order for more information, Wilson indicates that he is a pretrial detainee being held on a parole detainer from a 2006 conviction. ECF No. 9, ¶2, at 1. He claims that, upon his arrest on October 25, 2021, he advised the screening nurse of all of his medical conditions, including COPD, asbestosis, hypertension, and asthma. *Id*., ¶3, at 1-2. Since that time, he has not been treated for asbestosis and has lodged numerous sick call requests for breathing problems. *Id*. at 2.

Wilson further states that, in June 2022, Jessica Brousse,[2] N.P., ordered x-rays and testing at University Medical Center ("UMC") in New Orleans. However, nothing was done after her employment was terminated. He did receive the x-rays but the appointment at UMC was cancelled.

Wilson also alleges that he broke his shoulder in December 2022 when he fell from his bunk trying to reach for his inhaler during the night. In June 2022, he learned that nothing about his positive asbestosis test was in his medical records at St. Tammany Parish Jail. He claims that his criminal attorney, Christina Groce, got the records and found no mention of any one at the jail logging in his reports of an asbestosis diagnosis. After this, he claims he sent for his tests from

---

[2] Wilson incorrectly spelled the name Bruce in his pleadings.

3

Doctors Imaging in Metairie, Louisiana, and sent copies to the medical department at the jail. He contacted Dr. Ham through the kiosk at the jail but was never seen about breathing problems from asbestosis. Another of his criminal attorneys, James Burke, also obtained copies of his medical records and there still was no record of an asbestosis diagnosis. Wilson then filed a grievance complaint at the jail to no avail.

Wilson complains that he has not been treated or seen by outside medical personnel for his positive asbestosis test. He notes that x-rays taken in December 2022 confirmed that he fractured his shoulder when he fell out of the bed trying to get his breathing pump. Other inmates witnessed the incident and Nurse Kara was the first to treat him and provide a sling. *Id*. at 3. He indicates that other nurses, Shelly Chaz and Jessica Brousse, are no longer working at the jail.

Wilson further alleges that the conditions of the jail are not good for his medical problems especially without treatment. The jail once tried to clean the ceiling and vents to remove asbestos particles, mold, and visible smoke residue. On August 16, 2023, they tried again to clean after he filed this lawsuit.

C.    **Wilson's Notice to the Court (ECF No. 13)**

On November 16, 2023, the clerk filed a document received from Wilson in which he requested that the court assist him in getting outside medical treatment for his asbestosis problems. He complains of breathing problems and shortness of breath. He also claimed that the conditions of the jail are unreasonable for his health, specifically claiming he should be in a non-smoking area of the jail. He further indicated that every time he complains, he is told to fill out a sick call request for which he has to pay. I have construed this document as an amendment to Wilson's reply to my §1983 Response Order and consider is assessing his claims.

###### D.    *Spears* **Hearing Testimony**

On December 12, 2023, I conducted a video conference with Wilson.  ECF No. 16.  Wilson was sworn and testified for all purposes permitted by *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), *overruled on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989), and its progeny. The conference was electronically recorded.

During the hearing, Wilson testified that he received a copy of his STPJ medical records as ordered by the court.  However, he noted that his outside records provided by him to the jail were not included.  Another discrepancy he found is that the notes from two of his visits with Nurse Practitioner Jessica Broussard were left blank.  He also reiterated his concerns that the jail officials withdrew money from his account for visits but the withdrawals did not match the dates of his visits.

Wilson further testified that, when he entered the jail on October 25, 2021, he informed the intake nurse that he had been diagnosed with asbestosis.  He stated that he was first diagnosed with asbestosis following a chest x-ray on January 7, 2021.  He acknowledged that, attached to his complaint, is the radiology report of Laxminarayana Rao, M.D., dated January 25, 2021 which indicates that the x-ray, together with "the presence of significant occupational exposure history to asbestos dust and latency period," was "consistent with the diagnosis of bibasilar interstitial fibrosis due to asbestosis."[3]  Wilson also provided with his complaint a report from a physical examination by Warren Botnick, M.D., who indicates that, in addition to the chest x-ray read by Dr. Rao, Wilson had pulmonary function testing on February 26, 2021, at Chesnutt Pulmonary Service in Metairie, Louisiana.[4]  Dr. Botnick concluded:

---

[3] ECF No. 3-1, at 15.
[4] ECF No. 3-1, at 18.

> Based on this subject's industrial exposure, appropriate latent period, abnormal chest x-ray, and abnormal pulmonary function testing, I believe that he does beyond a reasonable doubt have evidence of asbestos related lung disease in the form of pulmonary fibrosis diagnostic of asbestosis.[5]

Wilson further testified that the doctor had planned to provide him with a pump, but before he could begin treatment, he was arrested and brought to jail.

Wilson stated that, on his arrival at STPJ, he told medical personnel that he had COPD, asbestosis, hypertension, and asthma. He also noted that he now suffers with additional issue including a swollen prostate and slurred speech following a stroke in August of 2020. He also advised the court that he does not smoke, vape, or use tobacco products of any kind.

Wilson further acknowledged that Dr. Samuel Gore is his treating physician at STPJ. He sees Dr. Gore every 90 days or so, and last saw him prior to the hearing by video in July 2023. Dr. Gore treats him for COPD, asthma, and hypertension, and his prostate issues. He claims that Dr. Gore has repeatedly denied his requests for outside testing for asbestosis and has not provided him with additional treatment specifically for asbestosis. Wilson stated that Dr. Gore has told him that there is nothing he can do for asbestosis and has denied his requests for transfer to a facility that can or for further evaluation of his condition. Wilson concedes that he does not know what treatment he should be getting for asbestosis or if it would differ for the treatment he receives for COPD. He stated, however, that is having more breathing troubles but remains on the same inhaler medication he was on for years before the asbestosis diagnosis.

Wilson also stated that, because of his breathing problems, he broke his shoulder when he fell from his bunk reaching for his inhaler during the middle of the night. He indicated that the guards did not respond to his call for help that night but the next morning Nurse Kara examined

---

[5] *Id*. at 18 (Impression).

him and checked on him each day.  He advised that he has no complaints about the medical care he received after fall, which included examination by an orthopedist who did not recommend surgery because of Wilson's age.  He was ultimately released from care in October 2023.

Wilson repeated that he first discussed his asbestosis with NP Jessica Brousse in March of 2022 and again in June of 2022.  He recalled that she planned to order him an x-ray and outside medical appointment.  However, nothing was done after she was terminated from her position at the jail.  He also stated that he spoke to Dr. Gore on June 28, 2023, and he advised Wilson that there was nothing he could do for asbestosis.  They did not discuss whether the medication Wilson was taking would work to treat the asbestosis.

Wilson further testified that STPJ is a non-smoking facility.  He stated that, although his dormitory is technically non-smoking, inmates burn all sorts of items to smoke.  Smoke can be smelled in the hallways such that even the guards complain.  He also claimed that, after he filed suit, jail officials attempted twice to clean the ceilings for mold, asbestos, and smoke residue. Wilson did not know whether they found mold or asbestos but inmates were left in the area to inhale the dust from the cleaning.  He also acknowledged that the jail regularly provides cleaning supplies that can be used by the inmates to clean their cells.

Wilson further stated that he sued Sheriff Smith because he did not do anything to correct his medical care when he or his counsel reviewed the third step appeal on his administrative grievance complaint about his medical care.  Wilson acknowledged that he had no interaction with the Sheriff about his medical care or the conditions of the jail except through the grievance process.

Wilson stated that he sued Warden Fleischman for his role in the review of the grievance related to his medical care.  He also spoke to the Warden about the inmates smoking in the jail, which Wilson acknowledges is against the policy of the jail.

7

Wilson named Dr. Ham as a defendant because he is Dr. Gore's supervisor. He is not Wilson's physician nor has he treated Wilson. Wilson claims his only communication with Dr. Ham was during the administrative grievance process through the kiosk at the jail. Wilson also disagrees with Dr. Ham's claim that he did not report the asbestosis issue to the jail until November 28, 2022, rather than when he arrived at the jail.

Wilson further stated that sought relief for his medical care issues at all three steps of the administrative grievance process at the jail. He did not file a separate grievance for his smoking complaint but recalls that he mentioned it in his grievance about his medical care.

### E.    Wilson's First Amended Complaint

Following the *Spears* hearing, Wilson filed an amended complaint to add Dr. Samuel Gore, his treating physician at the jail, as a defendant and assert claims of medical indifference against him. ECF No. 22. Wilson claims that he has been under Dr. Gore's care since November 7, 2021, and repeatedly talked to him about his exposure to asbestos and the conditions in which he lives at the jail. *Id*. at 1. His requests for outside care have been denied. He claims Dr. Gore repeatedly tells Wilson that there is no cure for asbestosis. Wilson alleges, however, that there must be treatments available to help with his lung condition even if there is no cure. He also has no way of knowing how bad his condition has gotten without additional testing. Under a broad reading of his claims, Wilson fears that his condition may have progressed into mesothelioma cancer which places him at risk of irreparable harm. *Id*. at 1-2. He argues that a reasonable doctor would do more or be held for deliberate indifference to his patient. *Id*. at 2. Wilson alleges that he has seen Dr. Gore numerous times, and the doctor has never treated him for asbestosis. He contends that the defendants are taking steps to hide his condition rather than treat him or do additional testing to determine if it has progressed.

8

### F.    **Wilson's Second Amended Complaint**

Wilson has filed a motion seeking leave to file a second amended complaint related to his claims against Dr. Samuel Gore.  ECF No. 24.  Specifically, Wilson alleges that he was seen by Dr. Gore on December 20, 2023, and again asked to be seen by a specialist for his asbestosis complaints.  *Id.* at 1.  Wilson claims that Dr. Gore told him that his asbestosis is "not going anywhere" and denied his request.  Wilson alleges that he told Dr. Gore he is concerned about his health because he had two friends die from asbestosis.  He also claims that the conditions of the jail are not getting any better, and several officers have been fired for bringing contraband into the jail.  He contends that he is still suffering at the hands of the Sheriff and Warden for allowing this kind of conduct.  *Id.* at 1-2.  Wilson also complains that his shortness of breath is worsening.  *Id.* at 2.  He requests that the court order that he be seen by a specialist for treatment and testing.

Wilson's claims in this proposed amendment to his complaint are consistent with his *Spears* hearing testimony and the first Amended Complaint filed thereafter.  The Court will grant Wilson leave to file the second amended complaint and includes the claims in this report.

## II.    **LEGAL STANDARDS**

### A.    **Required Elements of a § 1983 Claim**

Section 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .[6]

---

[6] 42 U.S.C. § 1983.

"The purpose of § 1983 is to deter state actors from using their badge of authority to deprive individuals of federally guaranteed rights and to provide relief to victims if such deterrence fails."[7]

A plaintiff must satisfy three elements to establish § 1983 liability:

(1)    deprivation of a right secured by the U.S. Constitution or federal law;
(2)    that occurred under color of state law; and
(3)    was caused by a state actor.[8]

Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[9] This requires the plaintiff to identify both the constitutional violation and the responsible person acting under color of state law.[10]  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"[11]

### B.    Statutorily Required Screening of Prisoner § 1983 Complaint

As soon as practicable after docketing, the court must review a prisoner's § 1983 complaint for a cognizable claim, or dismiss the complaint if it is frivolous and/or fails to state a claim.[12]  A claim is frivolous if it "lacks an arguable basis in law or fact."[13]  A claim lacks an arguable basis in law if it is "based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist."[14]  A factually frivolous claim alleges

---

[7] *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254-57 (1978)).

[8] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).

[9] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).

[10] 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2)(B); *Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998).

[11] *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *accord Thibodeaux v. Bordelon*, 740 F.2d 329, 333 (5th Cir. 1984).

[12] 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2)(B); *Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998).

[13] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994).  The law "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  *Macias v. Raul A.*, 23 F.3d 94, 97 (5th Cir. 1994) (quoting *Neitzke*, 490 U.S. at 327).

[14] *Davis*, 157 F.3d at 1005 (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)).

only facts that are "'clearly baseless,' . . . are 'fanciful,' 'fantastic,' and 'delusional' . . . [or] rise to the level of the irrational or wholly incredible . . . ."[15]  A court may not dismiss a claim simply because the facts are "unlikely."[16]

A complaint fails to state a claim on which relief may be granted when the factual allegations do not rise above a speculative level, with the assumption that all factual allegations in the complaint are true, even if doubtful.[17]  The Rule 12(b)(6) analysis is generally confined to a review of the complaint and its proper attachments.[18]  The Fifth Circuit has summarized the standard for Rule 12(b)(6):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.[19]

"[W]hen evaluating a motion to dismiss under Rule 12(b)(6), a court must accept[ ] all well-pleaded facts as true and view[ ] those facts in the light most favorable to the plaintiff."[20]  Thus, the court should assume the veracity of all well-pleaded allegations, viewing them in the light most

---

[15] *Moore v. Mabus*, 976 F.2d 268, 270 (5th Cir. 1992) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)).

[16] *Id.* at 270.

[17] *Garrett v. Thaler*, 560 F. App'x 375, 377 (5th Cir. 2014) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[18] *Walch v. Adjutant Gen.'s Dep't*, 533 F.3d 289, 293 (5th Cir. 2008) (citation omitted).

[19] *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and quoting *Twombly*, 550 U.S. at 544).

[20] *Id.* at 803 n.44 (quoting *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009) (internal quotations omitted)); *accord Murchison Capital Partners, L.P. v. Nuance Commc'ns, Inc.*, 625 F. App'x 617, 618 n.1 (5th Cir. 2015) (citing *Wood v. Moss*, 572 U.S. 744, 755 n.5 (2014)); *Maloney Gaming Mgt., L.L.C. v. St. Tammany Par.*, 456 F. App'x 336, 340 (5th Cir. 2011) (quoting *Elsensohn v. St. Tammany Par. Sheriff's Ofc.*, 530 F.3d 368, 371 (5th Cir. 2008) (quoting *Iqbal*, 556 U.S. at 696); *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 n.10 (5th Cir. 2017)).

favorable to the plaintiff, "'and then determine whether they plausibly give rise to an entitlement to relief.'"[21]

In comparing a dismissal for failure to state a claim under 28 U.S.C. § 1915(e) and FED. R. CIV. P. 12(b)(6), *Neitzke*, 490 U.S. at 319, held that a claim that is dismissed under one rule does not "invariably fall afoul" of the other.[22]  If an *in forma pauperis* complaint lacks even an arguable basis in law, dismissal is appropriate under both Rule 12(b)(6) and § 1915(e).[23]  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under [§ 1915(e)'s] frivolousness standard is not."[24]

### C.    The *Spears* Hearing

The initial screening of a *pro se* prisoner's claim includes a review of the complaint and testimony from a *Spears* hearing.[25]  The purpose of a *Spears* hearing is to dig beneath the conclusory allegations of a *pro se* complaint to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.[26]  "[T]he *Spears* procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."[27] The information elicited at such an evidentiary hearing is in the nature of an amended complaint

---

[21] *Jabary v. City of Allen*, 547 F. App'x 600, 604 (5th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 664); *see also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)).
[22] *Moore*, 976 F.2d at 269 (quoting *Neitzke*, 490 U.S. at 326) (citing 28 U.S.C. § 1915(d)) (current version at 28 U.S.C. § 1915(e)).
[23] *Id.*
[24] *Id.*
[25] *Spears*, 766 F.2d at 180 (5th Cir. 1985) (affirming magistrate court's dismissal of prisoner's claim based on complaint and evidentiary hearing).
[26] *Id.*
[27] *Davis*, 157 F.3d at 1005–06.

or more definite statement under Rule 12(e).[28]  The testimony from the *Spears* hearing will supersede the allegations of the plaintiff's complaint.[29]  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."[30]

The court may make only limited credibility determinations in a *Spears* hearing and may consider and rely on documents as additional evidence if they are properly identified, authentic, and reliable.[31]  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents."[32]

## III.  <u>ANALYSIS</u>

Wilson alleges that he has been denied adequate medical care by Dr. Gore for his asbestosis condition and that the conditions of his living environment in the jail are aggravating his asbestosis, COPD, and asthma medical conditions.  He further claims that Dr. Ham, Warden Fleischman, and Sheriff Smith have not properly addressed or responded to his grievance complaints about his medical care and the conditions of his confinement.  He has sued the defendants in their individual and official capacities.

### A.    <u>Constitutional Considerations</u>

The Eighth Amendment prohibits "cruel and unusual punishments" imposed upon convicted inmates and pretrial detainees through the Fourteenth Amendment's Due Process Clause when conditions of confinement "are incompatible with 'the evolving standards of decency that mark the progress of a maturing society' . . . or . . . 'involve the unnecessary and wanton infliction

---

[28] *Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991) (citing *Spears*, 766 F.2d at 181–82); *Adams v. Hansen*, 906 F.2d 192, 194 (5th Cir. 1990).
[29] *Riley v. Collins*, 828 F.2d 306, 307 (5th Cir. 1987).
[30] *Spears*, 766 F.2d at 182.
[31] *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) (citing *Cay v. Estelle*, 789 F.2d 318, 326–27 (5th Cir. 1986), *overruled on other grounds by Denton*, 504 U.S. at 25; *Wilson*, 926 F.2d at 482).
[32] *Id.*

of pain.'"[33]   The constitutional rights of a pretrial detainee encompass both the procedural and substantive due process guarantees of the Fourteenth Amendment.[34]  "The Fourteenth Amendment requires that state officials not disregard the 'basic human needs' of pretrial detainees, including medical care."[35]   Thus, "the substantive limits on state action set by the Due Process Clause provide that the state cannot punish a pretrial detainee."[36]

## B.   <u>Reimbursement of Funds</u>

As a preliminary consideration, Wilson claims generally that he is entitled to reimbursement of funds from the STPJ paid for medical care on dates that differ from when the care was provided or dates on which his specific requests for asbestosis treatment were denied. However, a claim of misappropriated funds or request for reimbursement of funds is not sufficient to state a Due Process claim under § 1983.  "[N]o constitutional claim may be asserted by a plaintiff who was deprived of his liberty or property by negligent or intentional conduct of public officials, unless the state procedures under which those officials acted are unconstitutional or state law fails to afford an adequate post-deprivation remedy for their conduct."[37]   An adequate post-deprivation remedy exists when an inmate can file a tort suit in state court for compensation for or recovery of his property (money), a remedy which is available in Louisiana.[38]

---

[33] *Estelle v. Gamble*, 429 U.S. 97, 102-103 (1976) (citations omitted); *Farmer v. Brennan*, 511 U.S. 825, 832, 837 (1994); *Palmer v. Johnson*, 193 F.3d 346, 351-52 (5th Cir. 1999) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) and *Farmer*, 511 U.S. at 832); *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (The "official conduct must be 'wanton,' which is defined to mean 'reckless.'").

[34] *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).

[35] *Reed v. Krajca (Estate of Henson)*, 440 F. App'x 341, 343 (5th Cir. 2011).

[36] *Reed v. Wichita Cnty. (Estate of Henson)*, 795 F.3d 456, 462 (5th Cir. 2015) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).

[37] *Martin v. Dallas County, Tex.*, 822 F.2d 553, 555 (5th Cir. 1987); *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *White v. Epps*, 411 F. App'x 731 (5th Cir. 2011).

[38] *Hernandez v. Egwe*, 840 F. App'x 797, 798 (5th Cir. 2021) (citing *Sheppard v. La. Bd. of Parole*, 873 F.2d 761, 763 (5th Cir. 1989)).

Furthermore, Wilson asserts this claim against the STPJ, which is not a named defendant and which would not be a proper defendant before this court.  "[A] prison or jail or its administrative departments are not entities that can be sued under Section 1983 because they are not juridical entities under state law capable of being sued and/or because they are not persons for purposes of suit under Section 1983 as the statute and case law define that term."[39]  A § 1983 claim must be asserted against an actual identified person, not the jail or the departments within it.[40]  Wilson has not identified a responsible person as a defendant, and even if he did, the claim would not reach the level of a due process violation for the reasons asserted above.  The court, therefore, has not basis to maintain jurisdiction over this potential state law claim for reimbursement.[41]

For these reasons, Wilson's claim for reimbursement of funds must be dismissed pursuant to 28 U.S.C. § 1915(e) and § 1915A as frivolous and otherwise for failure to state a claim for which relief can be granted.  Because he has failed to state a non-frivolous claim against STPJ or any responsible person, the Court should also decline supplemental jurisdiction over his potential state law tort claim.

## C.    Inadequate Medical Care and Conditions of Confinement

Wilson also alleges that certain defendants have been indifferent to his need for medical attention for asbestosis and that the smoky environment in which he is housed has been detrimental

---

[39] *Douglas v. Gusman*, 567 F. Supp. 2d 877, 892 (E.D. La. 2008) (citations omitted); *Jones v. St. Tammany Par. Jail*, 4 F. Supp. 2d 606, 613 (E.D. La. 1998) ("A parish jail is not [a suable] entity, but a building").

[40] *See Carter v. Strain*, No. 09-3401, 2009 WL 2390808, at *3 (E.D. La. July 31, 2009) (citing *August v. Gusman*, No. 06-3962, 2008 WL 466202, at *7 (E.D. La. Feb. 13, 2008); *Staritz v. Valdez*, No. 06-1926, 2007 WL 1498285, at *2 (N.D. Tex. May 21, 2007); *Banks v. United States*, No. 05-6853, 2007 WL 1030326, at *11 (E.D. La. Mar. 28, 2007)).

[41] Because there is no properly named defendant or basis for federal subject matter jurisdiction over this claim, the court has discretion either to decline or exercise supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367(c)(3). Considering the statutory provisions of § 1367(c) and balancing the relevant factors of judicial economy, convenience, fairness and comity and considering the early stage of this proceeding, this court should decline to exercise jurisdiction over any state law constitutional or tort claims and dismiss those claims without prejudice.

to his health.  The courts in the Fifth Circuit recognize the constitutional challenges brought by pretrial detainees, like Wilson, to be either an attack on a "condition of confinement" or an "episodic act or omission."[42]  Wilson in this case has asserted both types of challenges against the various defendants.

### 1.    Conditions of Confinement Claims Against Warden Fleischman and Sheriff Smith

Wilson alleges that the conditions of his confinement, specifically unauthorized smoking by inmates, has contributed to or perhaps exacerbated his breathing difficulties and related medical conditions.  He contends that Warden Fleischman and Sheriff Smith are responsible because they have not prevented the problems at the jail despite his grievance complaints.

An inmates "challenge to a condition of confinement is a challenge to 'general conditions, practices, rules, or restrictions of pretrial confinement.'"[43]  Some typical examples of condition-of-confinement cases include challenges to prison overcrowding, mattresses on floors, restrictions on inmate privileges, and disciplinary segregation with limited time out of the cell.[44]  The federal courts also have held that the Eighth Amendment protects prisoners from deliberate indifference to conditions, such as smoke, mold, and air-borne asbestos, that pose an unreasonable threat to their health.[45]  In determining whether living in environmental tobacco smoke violates the Eighth Amendment as deliberate indifference to a serious medical need, "requires a court to assess

---

[42] *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009); *Stevenson-Cotton v. Galveston County*, No. 22-40801, 2024 WL 138631, at *3 (5th Cir. Jan. 12, 2024); *see also Reed*, 795 F.3d at 464 ("[T]here is no rule barring a plaintiff from pleading both alternative theories[.]").

[43] *Id.*, 795 F.3d at 463 (quoting *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644 (5th Cir. 1996)); *Stevenson-Cotton*, 2024 WL 138631, at *5.

[44] *See Scott v. Moore*, 114 F.3d 51, 53 & n.2 (5th Cir. 1997).

[45] *See Helling v. McKinney*, 509 U.S. 25 (1993) (inmate may obtain injunctive relief under § 1983 based on exposure to environmental tobacco smoke in the absence of a present physical injury); *Herman v. Holiday*, 238 F.3d 660, 664-65 (5th Cir. 2001) (inmates' unwilling exposure to an unreasonably high concentration of air-borne asbestos particles constitutes a cognizable claim under the Eighth Amendment).

whether society considers the risk that the prisoner complains of [ETS] to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk."[46]

"A true jail condition case starts with the assumption that the State intended to cause the pretrial detainee's alleged constitutional deprivation."[47]  Any "punishment" of a pretrial detainee posed by conditions of their confinement, therefore, will run afoul of the Constitution.[48]  "A State's imposition of a rule or restriction during pretrial confinement manifests an avowed intent to subject a pretrial detainee to that rule or restriction," and "even where a State may not want to subject a detainee to inhumane conditions of confinement or abusive jail practices, its intent to do so is nevertheless presumed when it incarcerates the detainee in the face of such known conditions and practices."[49]

To recover for conditions resulting from policies intentionally creating unconstitutional conditions, whether that intent is actual or presumed, the plaintiff must allege that the conditions complained of were the result of a prison official's act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice."[50]  Though not expressly, "[t]he Fifth Circuit has at least suggested that condition-of-confinement claims are cognizable against individual actors only in their official capacities."[51]

---

[46] *Helling*, 509 U.S. at 36; *but see*, *Palmisano v. Franco*, 264 F.3d 1141, 2001 WL 822529, at *2 (5th Cir. June 21, 2001) (*per curiam*) (affirming dismissal of defendant who plaintiff claimed was deliberately indifferent to his serious medical needs when plaintiff was exposed to environmental tobacco smoke because that defendant was not "personally involved in any decisions regarding environmental tobacco smoke").

[47] *Hare*, 74 F.3d at 644-45.

[48] *Duvall v. Dallas Cnty., Tex.*, 631 F.3d 203, 206 (5th Cir. 2011).

[49] *Hare*, 74 F.3d at 644; *Reed*, 795 F.3d at 463.

[50] *Hare*, 74 F.3d at 645.

[51] *Nagle v. Gusman*, No. 12-1910, 2016 WL 768588, at *5 (E.D. La. Feb. 26, 2016) (collecting cases).

a.    No Individual or Supervisory Liability

Wilson named the Warden and Sheriff as defendants in their individual although he concedes that neither official was involved in his medical care. He claims also that he had no direct conversation or interaction with Sheriff Smith about the smoke or any condition at the jail outside of the three-step grievance process at the jail. He stated that he attempted to speak to the Warden about the smoke and conditions of his cell but was told that the policy of the jail is to be fully non-smoking. He mainly complains that the officials have not stopped the unauthorized smoking by inmates. He acknowledges that the jail has taken steps to clean the mold and smoke residue from the ceilings in the cell areas and has fired guards caught bringing unspecified contraband into the prison.

To state a claim against these defendants as personally liable under § 1983, Wilson must establish either that the defendant was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [the defendant] . . . and the alleged constitutional violation."[52] Wilson has not alleged that the Warden or Sheriff were personally involved in his medical care or had personal knowledge of the impact of mold or smoke residue in connection with his medical conditions. The fact that the Warden or Sheriff may have responded to a complaint through grievance process is not sufficient to state a cognizable claim against either of them since plaintiff has no right to an effective or successful grievance process.[53]

Wilson testified that when requested, he was moved away from areas in the jail with worse residual smoke. He also acknowledged that after he complained, even if through this lawsuit, the

---

[52] *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *accord Cox v. Irby*, 281 F. App'x 390, 391 (5th Cir. 2008); *Kohler v. Englade*, 470 F.3d 1104, 1114-15 (5th Cir. 2006).
[53] *Bonneville v. Basse*, 536 F. App'x 502, 503 (5th Cir. 2013); *Propes v. Mays*, 169 F. App'x 183, 184-85 (5th Cir. 2006); *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005).

prison has twice made efforts to clean the cell areas to remove what he describes as mold, smoke residue, and asbestos, although Wilson has not seen any report confirming that these things were found during cleaning. He also pointed out the jail officials' efforts to discharge guards found bringing contraband, implying smoking products, into the jail. These actions do not support his claim that the jail officials or their policies were indifferent to the conditions of his confinement or his health.

Wilson has not alleged a causal connection between any acts or inactions by these defendants and a constitutional deprivation or injury. Even if Wilson spoke with the Warden directly about the unauthorized smoking by other inmates, he does not allege that he made the Warden aware of his belief that the environmental smoke was causing him medical harm. Wilson also has not alleged that the Warden intentionally ignored his complaints or failed to enforce the policy in place to protect him. To that end, the officials' failure to follow jail policies without more does not violate the Constitution.[54]

Also, there is no *respondeat superior* liability under § 1983.[55] The Warden and Sheriff cannot be held liable under § 1983 pursuant to a theory of *respondeat superior* based on a claim that violations occurred at the hands of other jail personnel in their employ or under their supervision.[56] "A supervisory official may be held liable for his subordinates' actions under § 1983 only if the official implemented an unconstitutional policy that causally resulted in

---

[54] *Samford v. Dretke*, 562 F.3d 674, 681 (5th Cir. 2009) (citing *Richardson v. Thornton*, 299 F. App'x 461, 462-63 (5th Cir. 2008) ("The failure of the prison to follow its own policies . . . is not sufficient to make out a civil rights claim.")); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) ("Our case law is clear, however, that a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met." (citations omitted)).

[55] *Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996); *accord Field v. Corr. Corp. of Am. Inc.*, 364 F. App'x 927, 929 (5th Cir. 2010); *Cox*, 281 F. App'x at 391; *Kohler*, 470 F.3d at 1114-15.

[56] *Sanders v. English*, 950 F.2d 1152, 1160 (5th Cir. 1992); *Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979); *Barksdale v. King*, 699 F.2d 744, 746 (5th Cir. 1983).

plaintiff's injury.[57]  Wilson has not alleged that either the Warden or Sheriff implemented such a policy, order, or directive to cause or disregard a risk of injury to plaintiff.[58]

        b.      No Official Capacity Liability

As mentioned above, the Fifth Circuit suggests that conditions-of-confinement are best considered against defendants in an official capacity.[59]  To allege defendants' liability in their official capacities, otherwise an action against the entity they represent, *i.e.* Jefferson Parish, Wilson must identify a Parish policy implemented by the Sheriff or Warden as final policy-makers, that led to an alleged constitutional violation.[60]

The Fifth Circuit Court of Appeals has explained municipal liability which would apply to the claims against the Parish through defendants in an official capacity:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom.  The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.[61]

---

[57] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-95 (1978); *Thompson v. Johnson*, 348 F. App'x 919, 921 (5th Cir. 2009) (citing *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992)); *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008).

[58] *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987) (Supervisory officials "are not liable for the actions of subordinates on any theory of vicarious liability" and will only be liable if the official "implement[s] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."); *Douthit*, 641 F.2d at 346 (a defendant is liable under § 1983 only if he had personal involvement in the alleged unconstitutional act.); *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998) (a supervisory official may be liable for the acts of a subordinate if the plaintiff can establish that the supervisor either failed to supervise or train the subordinate, that a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and the failure to train or supervise amounted to deliberate indifference.); *Pierce v. Hearne Indept. Sch. Dist.*, 600 F. App'x 194, 199 (5th Cir. 2015) ("Deliberate indifference in this context ordinarily requires a pattern of similar constitutional violations by untrained employees . . .") (citing *Connick v. Thompson*, 563 U.S. 51, 62 (2011); *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003)).

[59] *Nagle*, 2016 WL 768588, at *5.

[60] *Monell*, 436 U.S. at 691-95; *Thompson*, 348 F. App'x at 921; *Gates*, 537 F.3d at 435.

[61] *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citations and quotation omitted).

"A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity."[62]  Rather, he must identify the policy or custom which allegedly caused the deprivation of his constitutional rights.[63]  Additionally, "the mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority."[64]

Thus, municipal liability under § 1983 requires proof of three elements: a policymaker, an official policy, and a violation of constitutional rights.  The policy must be the "moving force" behind the violation.[65]  Also, "isolated unconstitutional actions by municipal employees will almost never trigger liability."[66]  If there is no constitutional violation, as in the frivolous issues addressed above, the *Monell* claim fails.

Although he named the Warden and Sheriff in their official capacities, Wilson has not identified a Parish policy at the jail implemented to or resulting in a constitutional rights.  As noted above, to the extent he may concede that the jail has policies regarding no-smoking and the cleaning of the jail that are not regularly followed or enforced, the failure to follow the jail's policies alone is not a constitutional violation.[67]

Though given the opportunity to do so, Wilson has not identified an unconstitutional jail or Parish policy causally connected to the complained of conditions of his confinement.  As such, Wilson's claims against the Warden and the Sheriff in their official capacities should be dismissed

---

[62] *Colle v. Brazos Cnty.*, 981 F.2d 237, 245 (5th Cir. 1993); *see also Wetzel v. Penzato*, No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009).
[63] *See, e.g., Murray v. Town of Mansura*, 76 F. App'x 547, 549 (5th Cir. 2003); *Treece v. Louisiana*, 74 F. App'x 315, 316 (5th Cir. 2003); *Wetzel*, 2009 WL 5125465, at *3.
[64] *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848 (5th Cir. 2009).
[65] *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694).  "[I]solated unconstitutional actions by municipal employees will almost never trigger liability." *Id*. at 578 (citations omitted).
[66] *Id*. (citations omitted).
[67] *Myers*, 97 F.3d at 94.

pursuant to 28 U.S.C. § 1915(e), § 1915A and 42 U.S.C. § 1997e as frivolous and for failure to state a claim for which relief can be granted.

### 2. Episodic Event Claims Against Drs. Ham and Gore

Wilson alleges that he named Dr. Ham as a defendant because Dr. Ham responded to his grievance complaints about his medical care with inaccurate information and because Dr. Ham is Dr. Gore's supervisor.   He alleges that he named Dr. Gore as a defendant because he has not satisfactorily addressed Wilson's requests for treatment for asbestosis and has failed to acknowledge or include outside medical records of his asbestosis diagnosis in his prison records.

For an episodic-act-or-omission claim, "the complained-of harm is a particular act or omission of one or more officials."[68]   A plaintiff in an episodic-act-or-omission case "complains first of a particular act of, or omission by, the actor," and may also "point[] derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission."[69] To impose liability on a defendant in his individual capacity in an episodic-act-or-omission case, a pretrial detainee must establish that the defendant acted with subjective deliberate indifference.[70] A person acts with subjective indifference if (1) "he knows that an inmate faces a substantial risk of serious bodily harm," and (2) "he disregards that risk by failing to take reasonable measures to abate it."[71]   The mental state for subjective deliberate indifference requires that "(1) 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' and (2) 'he must also draw the inference.'"[72]   Thus, the official is liable when

---

[68] *Scott*, 114 F.3d at 53.

[69] *Id*.

[70] *Id*.

[71] A*nderson v. Dallas Cnty., Tex.*, 286 F. App'x 850, 860 (5th Cir. 2008) (citing *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)).

[72] *Williams v. Hampton*, 797 F.3d 276, 281 (5th Cir. 2015) (quoting *Farmer*, 511 U.S. at 837); *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003).

he ignores a danger to an inmate after he has been made fully aware of it.[73]  Subjective deliberate indifference "is an extremely high standard to meet."[74]

To impose liability on a defendant in his official capacity for an episodic event claim, and thus hold a municipality accountable for the constitutional violation, the detainee "must show that the municipal employee's act resulted from a municipal policy or custom adopted or maintained with objective deliberate indifference to the detainee's constitutional rights."[75]  Objective indifference "considers not only what the policy maker actually knew, but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights."[76]

### a.    No Official Capacity Liability

Claims against Dr. Ham and Dr. Gore in their official capacities, are addressed in the same manner whether they are employees of the jail or Sheriff's Department or employed by a private health care provider contracted to provide medical care to the inmates housed in STPJ.[77]  The standard for doing so is that set forth above under *Monell* which requires proof of three elements under § 1983:[78]  a final policymaker, an official policy, and a violation of constitutional rights.[79]

Wilson, however, has not pointed to a policy at the jail that controlled or dictated how or if he was treated for his medical conditions.  He instead points to the discretionary acts of the

---

[73] *Jackson v. Cain*, 864 F.2d 1235, 1246-47 (5th Cir. 1989).
[74] *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001).
[75] *Scott*, 114 F.3d at 54; *see also Sibley v. Lemaire*, 184 F.3d 481, 488 (5th Cir. 1999) (requiring plaintiff to show objective deliberate indifference "[t]o hold superiors liable").
[76] *Corley v. Prator*, 290 F. App'x 749, 750 (5th Cir. 2008) (citing *Lawson v. Dallas Cnty.*, 286 F.3d 257, 264 (5th Cir. 2002)).
[77] *Belcher v. Lopinto*, 492 F. Supp. 3d 636, 644 (E.D. La. 2020); *Quatroy v. Jefferson Par. Sher.'s Off.*, 2009 WL 1380196, at *5 (E.D. La. May 14, 2009).
[78] *Woodward v. Lopinto*, No. 18-4236, 2021 WL 1969446, at *5 (E.D. La. May 17, 2021) (quoting *Alfred v. Corr. Corp. of Am.*, No. 08-0643, 2009 WL 789649, at *2, n.1 (W.D. La. Mar. 24, 2009)) (citing *Monell*, 436 U.S. at 694)).
[79] *Spiller*, 130 F.3d at 167.

doctors in addressing his complaints. After several opportunities to provide a more specific basis for his claims, he has failed to allege any facts necessary to state a non-frivolous claim against Dr. Ham or Dr. Gore to invoke their official capacity liability arising from his medical care complaints.

b.    Individual Capacity Claims

Wilson alleges that he was denied adequate medical care by Dr. Gore and that Dr. Ham erred in denying his grievance complaints based on inaccurate facts. A prisoner, whether pretrial or convicted, may succeed on a claim under § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.[80] Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."[81] "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"[82]

An inmate's claims of negligent care or his mere disagreement with the speed, quality, or extent of medical treatment received, however, does not give rise to a § 1983 claim.[83] Indeed, a

---

[80] *Estelle*, 429 U.S. at 106.

[81] *Id*. at 104-05.

[82] *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (quoting *Domino*, 239 F.3d at 756).

[83] *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (although inmate died, active treatment of his serious medical condition refuted claim of deliberate indifference, even if treatment was negligently administered); *accord Rowe v. Norris*, 198 F. App'x 579, 2006 WL 2711945, at *2 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication); *Marksberry v. O'Dea*, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999) (alleged inadequate treatment for broken hand failed to state constitutional violation, when inmate was examined by physician and received x-rays and medication); *Williams v. Browning*, No. 03-157, 2006 WL 83433, at *1, *3 (S.D. Tex. Jan. 11, 2006) (inmate with diabetes, hypertension, anxiety and chronic knee ailment alleged he was unable to timely obtain his medications did not establish any substantial harm from the delay and failed to state a claim for deliberate indifference).

delay in receiving medical treatment is only actionable when the delay is caused by defendants' deliberate indifference and the delay results in substantial harm to the plaintiff.[84]

> i. Dr. Ham

Wilson advised the court that he named Dr. Ham as a defendant because he was Dr. Gore's supervisor and stated incorrect information in his grievance response about when Wilson first complained that his asbestosis diagnosis not being included in the jail's medical records.  As discussed above, a defendants may be individually liable under § 1983 only if the defendant was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [the defendant] . . . and the alleged constitutional violation."[85] Wilson acknowledges that Dr. Ham was not his treating physician and did not examine him or treat him for any condition.  Wilson has failed to state a non-frivolous claim against him for inadequate medical care.

Further, Dr. Ham's unfavorable and perhaps inaccurate references in the grievance reply also do not stand as a basis for liability under § 1983.  Plaintiff has no right to an effective or successful grievance process.[86]

Also, Dr. Ham cannot be held vicariously liable under *respondeat superior* theory for any actions by Dr. Gore.[87]  He has not alleged that Dr. Ham as a supervisor implemented an unconstitutional policy or issued a directive for Dr. Gore to follow in treating him or failing to treat him.[88]  He has not alleged a basis for supervisory liability.

---

[84] *See, e.g.*, *Clark v. Gusman*, No. 11-2673, 2012 WL 1825306, *4 (E.D. La. Mar. 29, 2012) (three week delay before seeing a doctor was not unreasonable for nonemergency care).
[85] *Douthit*, 641 F.2d at 346; *Cox*, 281 F. App'x at 391; *Kohler*, 470 F.3d at 1114-15.
[86] *Bonneville*, 536 F. App'x at 503; *Propes*, 169 F. App'x at 184-85; *Geiger*, 404 F.3d at 373-74.
[87] *Sanders*, 950 F.2d at 1160; *Baskin*, 602 F.2d at 1208; *Barksdale*, 699 F.2d at 746.
[88] *Thompkins*, 828 F.2d at 303; *Douthit*, 641 F.2d at 346; *Smith*, 158 F.3d at 911-12; *Pierce*, 600 F. App'x at 199.

For these reasons, Wilson's claims against Dr. Ham are subject to dismissal pursuant to 28 U.S.C. § 1915 and § 1915A as frivolous and for failure to state a claim for which relief can be granted.

        ii.  Dr. Gore

At this stage, Wilson's assertions against Dr. Gore, as his treating physician, provide at least a basis for a claim of medical indifference under the foregoing standards. Wilson claims that, since his arrival in the jail, he has repeatedly advised Dr. Gore and other medical care providers that he was diagnosed with asbestosis, a serious medical condition, prior to his arrival at the jail. He further claims that, despite his efforts, he has not been treated for asbestosis, allowed additional examination to determine the extent the disease may have advanced, and has been denied requests to see a specialist for the condition. Wilson also claims he has made multiple efforts to provide his records to the jail medical staff and those records still have not been made part of his records or treatment plan.

As outlined previously, Wilson provided with his complaint documentation that demonstrates that he was diagnosed with asbestosis on January 25, 2021.[89] Wilson claims that he has attempted to no avail on several occasions to provide the medical staff with his records from 2021 related to the diagnosis. Wilson claims that he has repeatedly mentioned the condition to Dr. Gore and other care providers numerous times since June 2022. Wilson alleges that each time he brings asbestosis up, Dr. Gore replies that the condition is not going anywhere.

---

[89] ECF No. 3-1, at 15 & 18.

The medical records obtained by the court from the jail appear to support Wilson's allegations.[90]  As an initial matter, despite a number of release forms signed, the jail's medical records, provided to the Court by STPJ, do not include the asbestosis diagnostic records from Dr. Rao or Dr. Botnick that have been provided to the court by Wilson.  The first recorded reference to Wilson's mention of asbestosis appears in the notes from a visit with NP Brousse on June 22, 2022.[91]  She also obtained a medical records release form from Wilson and ordered a chest x-ray.[92]  The records contain numerous other reports from Wilson that he was diagnosed with asbestosis before his arrest for which he was seeking treatment or testing.[93]  A number of those records appear on reports by Dr. Gore, yet no treatment or testing was ordered and no mention of a plan of treatment or availability of one for asbestosis.[94]  The records also do not reflect that Dr. Gore, or any care provider at the jail other than the former nurse practitioner Brousse, have examined, treated, or tested Wilson for asbestosis.

For these reasons, Wilson has at least stated a non-frivolous claim of medical indifference against Dr. Gore, in his individual capacity, set forth in his complaints supplemented by the *Spears* testimony.  This claim should be allowed to proceed forward.

## IV.    **ORDER**

It is **ORDERED** that plaintiff Milton Wilson's motion for leave to file a second amended complaint (ECF No. 24) to urge medical indifference claims against Dr. Samuel Gore is

---

[90] ECF No. 11.  *See Baneulos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (the court may consult an inmate's medical records of sick calls, examinations, diagnosis, and medications to assess the frivolousness of his medical indifference claims).

[91] ECF No. 11-3, at 196 (6/15/22 Provider Examination Sheet).

[92] *Id*. at 197-98 (6/15/22 clinical impressions).

[93] *See, e.g.*, *Id*. at 456 (7/19/22 Request for Medical Services); *Id*. at 449 (9/7/22 Request for Medical Services); *Id*. at 446 (9/21/22 Request for Medical Services); *Id*. at 178 (9/22/22 Nursing Progress Notes).

[94] *See, e.g.*, *Id*. at 432 (10/31/22 Physician's Notes/Orders); *Id*. at 168 (11/28/22 Chronic Care Treatment Plan).

**GRANTED** and that the Clerk of Court shall separately file and docket a copy of ECF No. 24 as plaintiff's Second Amended Complaint.

## V.    RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that plaintiff Milton Wilson's 42 U.S.C. § 1983 claims against the defendants Dr. Jose Ham, Warden Daniel Fleischman, and Sheriff Randy Smith, each in their official and individual capacities, and defendant Dr. Samuel Gore, in his official capacity only, be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915, § 1915A and as applicable, 42 U.S.C. § 1997e, as frivolous and otherwise for failure to state a claim for which relief can be granted.

It is further **RECOMMENDED** that Wilson's § 1983 claim for reimbursement of funds must be dismissed pursuant to § 1915(e) and § 1915A as frivolous and otherwise for failure to state a claim for which relief can be granted, and that the Court decline supplemental jurisdiction over his potential state law tort claim and dismiss without prejudice his state law claim for reimbursement of funds.

It is further **RECOMMENDED** that Wilson's § 1983 claims of medical indifference against Dr. Samuel Gore in his individual capacity be allowed to proceed and remain referred to the undersigned Magistrate Judge for further pretrial proceedings.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[95]

New Orleans, Louisiana, this 20th day of February, 2024.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[95] *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir. 1996). *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.