UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**MILTON WILSON**                                                                  **CIVIL ACTION**

**VERSUS**                                                                         **NO. 23-2708**

**JOSE HAM ET AL.**                                                                **SECTION "B"(2)**

ORDER AND REASONS

Considering plaintiff Milton Wilson's motion to furnish representation (Rec. Doc. 46),

**IT IS HEREBY ORDERED** that the motion is **GRANTED IN PART**, in accordance with this Order.

**IT IS FURTHER ORDERED** that the motion is **REFERRED** to Magistrate Judge Currault for the limited and unresolved issue of plaintiff's ability to pay privately retained counsel, pursuant to the United States District Court for the Eastern District of Louisiana's *Resolution for Appointment of Pro Bono Counsel in Civil Cases* and 28 U.S.C. § 1915(e)(1). If Judge Currault determines plaintiff meets the financial requirements for counsel appointment, she may order appointment from the Civil Pro Bono Counsel Panel.

I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff brings his complaint under 42 U.S.C. § 1983, contending medical indifference related to the treatment of his asbestosis while incarcerated. *See* Rec. Doc. 3 at 2 ¶IV. Original named defendants were Dr. Jose Ham, St. Tammany Parish Jail Warden Daniel Fleischman, and St. Tammany Parish Sheriff Randy Smith, each in their individual and official capacities. *Id.* at 2 ¶III. With leave of the court, plaintiff amended his complaint to add as a defendant his treating physician, Dr. Samuel Gore, also sued in his individual and official capacities. Rec. Doc. 22. A

1

second amended complaint followed, providing further detail to allegations against Dr. Gore. Rec. Doc. 29. Magistrate Judge Currault also conducted a *Spears* hearing to identify more clearly the allegations being made by the *pro se*, incarcerated plaintiff. Rec. Doc. 16 (citing *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), *overruled on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989)).

In a pair of Reports and Recommendations, Judge Currault disposed of all claims except for those made against Dr. Gore in his individual capacity. *See* Rec. Docs. 28 and 31. As to the claims against Warden Fleischman and Sheriff Smith, Judge Currault determined that neither had been personally involved in or knowledgeable of plaintiff's medical care, thereby eliminating the individual capacity claim. *See* Rec. Doc. 28 at 18–19. Moreover, plaintiff identified no unconstitutional policy implemented by the warden or sheriff that causally connected to his allegations, thereby eliminating the official capacity claims. *See id.* at 21–22. Moreover, Judge Currault found the official capacity claims against Dr. Ham and Dr. Gore to similarly fail: "Wilson . . . has not pointed to a policy at the jail that controlled or dictated how or if he was treated for his medical conditions. He instead points to the discretionary acts of the doctors in addressing his complaints." *Id.* at 23–24. As Dr. Ham "was not [plaintiff's] treating physician and did not examine him or treat him for any condition," Judge Currault also determined frivolous the individual claim against the supervising doctor. *Id.* at 25.

But the claim against Dr. Gore in his individual capacity survived. "At this stage, Wilson's assertions against Dr. Gore, as his treating physician, provide at least a basis for a claim of medical indifference under the foregoing standards." *Id.* at 26. Although defendants contend that plaintiff provided information about his asbestosis condition only on November 28, 2022, Judge Currault observed "the medical records appear to support Plaintiff's allegations that he reported his

asbestosis condition earlier than suggested by Defendants but failed to receive examination or treatment for same for a period of time." Rec. Doc. 31 at 5–6. Plaintiff's pre-incarceration medical records appear absent in the jail records. *See* Rec. Doc. 28 at 27. However, present in the records is a note by a nurse practitioner on plaintiff's condition, with a release form to obtain the earlier records and an order of a chest x-ray. *See* Rec. Doc. 11-3, at 198 (6/15/22 Provider Examination Sheet) ("Past Medical/Surgical History: States he was dx with asbestos right before coming to jail at Slidell Memorial in October 2021 after presenting with respiratory complaints. He was told to follow up with PCP, but never did because he was arrested first . . . . Reports SOB at times—could be sequela of COPD or asbestos exposure secondary to job. O2 looks great. Normal PE. Chest CTA. Continue meds as ordered for now. Chest x ray in the morning. ROI signed to obtain medical records from Slidell Memorial for further information."). Based on the allegations and supporting medical records, Judge Currault determined plaintiff presents a non-frivolous claim of medical indifference against Dr. Gore in his individual capacity. *See* Rec. Doc. 28 at 27; Rec. Doc. 31 at 5–6.

This Court adopted both Reports and Recommendations, overruling parties' objections and making them the opinions of the Court. *See* Rec. Doc. 32 and 40. Subsequently, parties declined to provide unanimous consent for the matter to remain with the magistrate judge, thereby presenting the remaining issues before the undersigned district judge. *See* Rec. Doc. 42. Plaintiff now moves for the appointment of counsel. Rec. Doc. 46.

**II.   APPOINTMENT OF COUNSEL STANDARD**

A federal district court should only appoint counsel for an indigent plaintiff in a civil rights case if the case presents exceptional circumstances. *Naranjo v. Thompson*, 809 F.3d 793, 799 (5th Cir. 2015) (citing *Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982)); *Norton v. E.U.*

*Dimazana*, 122 F.3d 286, 293 (5th Cir. 1997). Accordingly, there is no automatic right to appointment of counsel in a civil rights case, so the court may not appoint counsel as a matter of course or ordinary practice. *Baranowski v. Hart*, 486 F.3d 112, 126 (5th Cir. 2007) (citing *Castro Romero v. Becken*, 256 F.3d 349, 353–54 (5th Cir. 2001)); *see also Hadd v. LSG-Sky Chefs*, 272 F.3d 298, 301 (5th Cir. 2001). Rather, in civil rights cases, counsel should be appointed only upon a showing of "exceptional circumstances," with factors including:

> (1) the type and complexity of the case;
> (2) the petitioner's ability adequately to present and investigate his case;
> (3) the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and in cross-examination; and
> (4) the likelihood that appointment will benefit the petitioner, the court, and the defendants by shortening the trial and assisting in just determination.

*Parker v. Carpenter*, 978 F.2d 190, 193 (5th Cir. 1992) (quotations omitted). In addition, the court should consider whether appointment would be a service to the court and all parties in the case by "sharpening the issues . . . , shaping the examination of witnesses, and thus shortening the trial and assisting in a just determination." *Ulmer*, 691 F.2d at 213.

These considerations follow an initial determination that an indigent plaintiff presents a plausible, non-frivolous claim. *Naranjo*, 809 F.3d at 799. Previously, Judge Currault denied as premature plaintiff's motion for appointment of counsel. *See* Rec. Doc. 8. She reasoned that "[o]nly after completion of the required screening process will this court be in a position to assess whether 'exceptional circumstances' exist to warrant appointment of counsel in this proceeding." *Id.* at 1. In response to plaintiff's motion for appointment of counsel, Judge Currault also notes "[h]is motion indicates that he has made efforts to obtain counsel, but he does not provide reasons why counsel might be needed in this case." *Id.*; *see also* Rec. Doc. 7. Plaintiff properly reurges the motion now, with his individual claim against Dr. Gore having survived the screening process.

Plaintiff presents a one-sentence argument for the appointment of counsel: "Representation is needed herein to adequately represent the complex medical issues in this case." Rec. Doc. 46 at 1. In consideration of defendants' motion to dismiss claims against Dr. Ham and Dr. Gore, Judge Currault seemingly distilled the relevant issues:

> The motion reflects a fundamental fact dispute regarding a pivotal allegation of the Complaint: whether Plaintiff advised of his asbestosis and requested medical treatment on November 7, 2021, shortly after being arrested and thereafter submitted numerous medical requests (ECF No. 3 at 2–3) versus whether Plaintiff first advised of his asbestosis on November 28, 2022 (ECF No. 26-1 at 4).

Rec. Doc. 31 at 5. The straightforward dating considerations, however, belie deeper, more technical matters. Chief among our concerns is the applicable medical standard of care, which will help clarify the distinction between medical indifference and medical negligence. As only the former is actionable—and likely can only be established by careful legal and medical review—this case presents a measure of complexity. Medical records that already near 900 pages also point to the case's complexity. *See* Rec. Doc. 11. As claims have been narrowed, what remains are technical issues requiring skill in presentation of evidence and in cross-examination of medical personnel witnesses and experts. Appointed counsel, in turn, could help frame pertinent issues.

Nonetheless, plaintiff's entitlement to appointed counsel also depends on his financial needs and other issues, including possible reconsideration of above factors that Magistrate Judge Currault deem necessary here, relying upon United States District Court for the Eastern District of Louisiana's *Resolution for Appointment of Pro Bono Counsel in Civil Cases* and 28 U.S.C. § 1915(e)(1).

New Orleans, Louisiana this 19th day of April, 2024

_____
SENIOR UNITED STATES DISTRICT JUDGE